IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PORTER CAPITAL CORPORATION, | }<br>}<br>} |
| Plaintiff, | }<br>} |
| v. | Case No.: 2:12-CV-00925-RDP |
| JOHNS MANVILLE, INC., | }<br>}<br>} |
| Defendant. | } |

## MEMORANDUM OPINION

Before the court is Defendant's Motion for Judgment on the Pleadings (Doc. #28), filed under seal on March 22, 2013.  The Motion (Doc. #28) has been full briefed (*See* Docs. #28, #30, #31) and is properly under submission.  For the reasons outlined below, Defendant's Motion (Doc. #28) is due to be denied.

**I.      BACKGROUND AND RELEVANT FACTS**

Plaintiff initiated this action by filing a Complaint (Doc. #1) on March 22, 2012.  Plaintiff alleges that it entered into a Commercial Financing Agreement ("Financing Agreement") with HB Logistics, LLC d/b/a McGriff Transportation ("HB Logistics") on February 25, 2011.  (Doc. #1 at ¶ 8).  HB Logistics provides transportation carrier services to various companies.  (Doc. #1 at ¶ 6).  During 2011, HB Logistics provided transportation carrier services to Defendant for which it issued invoices to Defendant.  (Doc. #1 at ¶ 7).  Under the terms of the Financing Agreement entered into between Plaintiff and HB Logistics, Plaintiff extended a line of credit to HB Logistics in the amount of $3,500,000.00.  (Doc. #1 at ¶ 8).  Pursuant to the Financing Agreement, HB Logistics sold, assigned, transferred, and delivered to Plaintiff certain accounts receivable generated by HB

Logistics. (Doc. #1 at ¶ 9). The accounts receivable that Plaintiff purchased and received from HB Logistics included accounts receivable on which Defendant is the account debtor. (Doc. #1 at ¶ 10). Plaintiff claims that "all right, title, and interest HB Logistics" had in these accounts receivable have been transferred to Plaintiff. (Doc. #1 at ¶ 11). Upon this assignment, Plaintiff asserts that it is entitled to all amounts due and owing on the invoices. (Doc. #1 at ¶ 12).

Plaintiff also maintains that on or before April 13, 2011, Plaintiff and HB Logistics provided an authenticated notification of the assignment to Defendant, Defendant received the notification, and thereafter Defendant was to make all payments to Plaintiff. (Doc. #1 at ¶ 13). Plaintiff's "records indicate that [Defendant] made payment on certain [invoices] to HB Logistics and/or other third parties on or after" receiving notification of the assignment. (Doc. #1 at ¶ 14). Plaintiff claims that Defendant failed to make payment on certain other invoices. (Doc. #1 at ¶ 14). Plaintiff maintains that Defendant has refused to pay Plaintiff amounts that are due on the invoices that Defendant either paid to HB Logistics or another third party and on those that remain unpaid. (Doc. #1 at ¶ 15). Plaintiff's Complaint presents six claims for relief: breach of contract (Count I); unjust enrichment (Count II); account stated (Count III); open account (Count IV); quantum meruit (Count V); and wrongful payment (Count VI);

Defendant argues that Plaintiff's breach of contract claim (Count I) fails a matter of law because: (1) the right Plaintiff seeks to vindicate (the right to receive direct payment from Defendant) is one that neither HB or Plaintiff ever possessed; (2) even if Defendant had an obligation to pay Plaintiff, the notice of assignment Plaintiff provided to Defendant was insufficient to trigger any obligation because the notice did not comport with the requirements established in the contract between Defendant and HB; and (3) the Federal Aviation Administration Authorization Act of 1994,

49 U.S.C. § 14501(c)(1) ("FAAAA"), preempts the enactment or enforcement of state laws in a manner related to the prices, routes, and services of a motor carrier. Defendant further asserts that Plaintiff's equitable claims (Counts II-VI) fail as a matter of law because: (1) Plaintiff's own allegations demonstrate that it is not entitled to recovery on some of these counts and/or that these counts are incompatible with the alleged contract that is the subject of the Complaint; and (2) they are preempted by the FAAAA.

## II.     STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When reviewing a motion for judgment on the pleadings, the court accepts the facts in the complaint as true and construes them in the light most favorable to the nonmoving party. *See e.g., Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002); *Ortega v. Christian*, 85 F.3d 1521, 1524-25 (11th Cir. 1996). The court may enter a judgment on the pleadings "only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Moore v. Liberty Nat'l Life Ins.*, 267 F.3d 1209, 1213 (11th Cir. 2001). Furthermore, a judgment on the pleadings is appropriate when "no issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Ortega*, 85 F. 3d at 1524.

A judgment on the pleadings is limited to consideration of "the substance of the pleadings and any judicially noticed facts." *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998). If, on a motion for judgment on the pleadings, the court considers matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, the court has discretion to consider

documents outside the pleadings without converting a motion for judgment on the pleadings into a motion for summary judgment when the court finds that two conditions are satisfied: (1) the document must be central to the plaintiff's claims, and (2) the authenticity of the document must not be in dispute. *E.g., Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley* 304 F. 3d at 1134; *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1371, at 273 (3d ed. 2004) ("It is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c).").

### III.  DISCUSSION

#### A.  The Penultimate Issue of Extraneous Documents

Initially, the court must determine whether to exercise its discretion and consider four documents proffered by Defendant, all of which are not part of the pleadings. This threshold determination affects the court's ultimate holding. Defendant submits that the court should consider the following items in considering its Motion for Judgment on the Pleadings: (1) the Contract Carrier Agreement between Defendant and HB Logistics; (2) a Powertrak Freight Payment Service for Sellers Agreement entered into between U.S. National Bank Association ("U.S. Bank") and HB Logistics; (3) a Powertrak Global Services Agreement entered into between U.S. Bank and Defendant; and (4) the notice of assignment sent by Plaintiff and HB Logistics to Defendant.

Regarding the first three documents, Defendant maintains that they are central to Plaintiff's claims because these contracts establish the "right, title, and interest" to which Plaintiff asserts it is entitled. Defendant maintains that HB (and ultimately Plaintiff's) right to be paid on the accounts was established through a combination of these three contracts. (Doc. #28 at pg. 4). According to

Defendant, HB was only entitled to payment from a third party, U.S. Bank, upon submission of certain shipment and delivery information. (Doc. #28 at pgs. 4-6). Therefore, Defendant argues that HB could not assign (and Plaintiff could not receive) the right to *direct* payment from Defendant. In order to determine whether the court will exercise its discretion and consider these documents as part of Defendant's Motion for Judgment on the Pleadings, the court must first examine whether the documents are central to Plaintiff's claims.

To determine whether these documents are central to Plaintiff's claims, the court refers to the elements of a breach of contract claim under Alabama law, which are: "(1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009). Thus, in order to prove its breach of contract claim, Plaintiff must establish that Defendant was under an initial obligation to pay HB, and by assignment to pay Plaintiff, the amounts owed. As Defendant correctly notes, HB could only assign rights to Plaintiff that HB actually possessed. *See e.g., Singer Asset Fin. Co., L.L.C. v. Conn. Gen. Life Ins. Co.*, 975 So. 2d 375, 380 (Ala. Civ. App. 2007) ("When a party assigns its rights under a contract to an assignee, the assignee steps into the shoes of the assignor and possesses all the rights the assignor originally possessed, but nothing more."). The contracts Defendant urges the court to consider very well may be central to Plaintiff's breach of contract claim in this regard. However, not only must these documents be central to Plaintiff's claims, but also their authenticity must not be disputed. Here, the second condition is not satisfied.

In its Response, Plaintiff asserts that these "alleged contracts...are not undisputed" and that because discovery has not been completed "the authenticity and/or effectiveness of the documents

has not been determined." (Doc. #30 at pgs. 14-15). Because Plaintiff disputes the authenticity of these contracts, the court may not consider them on Defendant's Motion for Judgment on the Pleadings. *See e.g., Day*, 400 F.3d at 1276; *Horsley* 304 F. 3d at 1134.

Next, the court finds that it may consider the notice of assignment. Whether Defendant received notice of the assignment of the right to be paid under the accounts receivable is central to Plaintiff's breach of contract claim. Further, Plaintiff referred to the notice in its Complaint. (*See* Doc. #1 at ¶¶13, 18, 28, 42). Although referred to, the actual notice is not attached to Plaintiff's Complaint. However, a sample notice is attached as part of the Financing Agreement. (Doc. #1, Ex. A at pg. 11). Because (1) Plaintiff alleges Defendant received proper notice and (2) this notice is referred to in Plaintiff's Complaint, the court finds it is central to Plaintiff's breach of contract claim. The next question is whether the authenticity of the actual notice attached to Defendant's Motion is disputed. Certainly, Defendant does not question the authenticity of this document. And, although Plaintiff disputes the authenticity of the three contracts discussed above, it does not explicitly challenge the authenticity of the notice. Therefore, because the notice is central to Plaintiff's claims and because neither party has disputed the authenticity of the attached notice of assignment, the court may consider the notice of assignment attached as Exhibit 4 to Defendant's Motion.[1] *See e.g., Day*, 400 F.3d at 1276; *Horsley* 304 F. 3d at 1134.

---

[1] Although the court may consider the Notice of Assignment, as explained in greater detail below, Defendant's allegations regarding insufficient notice are dependent upon terms contained in the Contract Carrier Agreement between Defendant and HB Logistics (*See* Doc. #28 at pgs. 14-15), which the court has already concluded it will not consider. Accordingly, although the court may consider the Notice of Assignment, it will not do so to the extent Defendant maintains it does not comport with the Contract Carrier Agreement.

B.     **The Question of the Parties' Arguments on the Merits**

1.     **Breach of Contract (Count I)**

As outlined above, the court will not consider the three contracts attached to Defendant's Motion. Thus, at this stage, the court cannot rule upon the merits of Defendant's first two arguments regarding Plaintiff's breach of contract claim. First, Defendant's initial argument that Plaintiff's breach of contract claim fails because HB did not possess a right to be paid directly by Defendant, and thus could not assign this right to Plaintiff, requires that court to examine the three contracts. Because the authenticity of the documents is disputed, the court cannot consider these contracts.[2] As it currently stands, the court finds that Plaintiff's allegations, taken as true, state a *prima facie* case for breach of contract. Second, the court cannot determine whether the alleged notice of assignment was effective under the Contract Carriers Agreement between Defendant and HB without considering the contract itself. Because the court will not consider the Contract Carriers Agreement at this stage, it is impossible to determine: (1) whether the notice of assignment must comply with the notice provision of that document; and, if so, (2) whether the notice in this case was indeed effective. Accordingly, Defendant's Motion on Plaintiff's breach of contract claim is due to be granted, if at all, on the FAAAA preemption issue, which the court considers below.

The FAAAA's preemption clause provides that "a State...may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier." 49. U.S.C. § 14501(c)(1). Congress borrowed this language from the preemptive provision of the Airline Deregulation Act ("ADA"), and courts interpreting the

---

[2]Additionally, given its discretion to consider these documents outside the pleadings, the court prefers that the parties brief the issue of what right, title, or interest HB could assign to Plaintiff, if it remains, at the summary judgment stage, when the court considers the merits of Plaintiff's claims.

preemptive scope of the FAAAA have relied upon authority addressing the preemptive scope of the ADA.  *See e.g.*, *Rowe v. N.H. Motor Transport Ass'n*, 552 U.S. 364, 368 (2008); *Barber Auto Sales v. United Parcel Servs., Inc.,* 494 F. Supp. 2d 1290, 1293-94 (N.D. Ala. 2007); *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 668 (N.D. Ga. 1997).

The "related to" language of both the ADA and FAAAA has been interpreted broadly, and the Supreme Court has concluded that these words have an expansive sweep. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (stating that the ADA preemption clause is not limited to state action actually prescribing rates, routes or services, but that it applies to any action "having a connection with or reference to...rates, routes, or services")*. See also DiFiore v. Am. Airlines, Inc.*, 646 F.3d  81, 86 (1st Cir. 2011) ("Congress' language in the preemption section – always the first resort in construing a federal statute – is broad but vague.").  Although interpreted broadly, the Supreme Court recently commented that "the breadth of the words 'related to' does not mean the sky is the limit." *Dan's City Used Cars, Inc. v. Pelkey*, - - - S.Ct. - - - (2013), 2013 WL 1942398, at *6. Additionally, as indicated by the *Morales* court, federal law may not pre-empt state laws that affect rates in only a "tenuous, remote, or peripheral...manner." *Morales*, 504 U.S. at 390 (internal citations omitted).   Further, the FAAAA does not preempt all state-law claims related to the prices, routes, and services of motor carriers.  In *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 232 (1995), the Supreme Court carved out an exception to the scope of preemption for "routine breach of contract claims." The court commented that "[m]arket efficiency requires effective means to enforce private agreements." *Id.* at 230.  And, according to the Court, this exception for breach of contract actions distinguishes between "what the State dictates and what the [carrier] itself undertakes. . . ." *Id.* at 233.

8

It follows that the court's first order of business is to determine whether the FAAAA preemption provision applies at all. This task requires the court to decide whether Plaintiff's breach of contract claim relates to a rate, route, or service of HB Logistics. The court finds that it does not. Initially, the court notes that Defendant has not cited to (and the court is unaware of) any authority applying the FAAAA where the motor carrier itself was not a party to the action. Therefore, the cases relied upon by Defendant supporting its argument that Plaintiff's breach of contract claim is related to HB Logistics' rates, routes, or services are not persuasive. Further, the court is not convinced that Plaintiff's breach of contract action has the "significant" impact related to Congress's deregulation and preemption related objectives as contemplated by the Supreme Court. *See Rowe*, 552 U.S. at 370-371. Plaintiff's breach of contract action alleges that it has been assigned the right to payment from Defendant on various invoices. The court fails to see how enforcement of the contract assignment impacts HB Logistic's rates, routes, or services. Plaintiff only seeks to recover payment it alleges it is due. Such an action has *at best* a tenuous, remote, or peripheral effect on HB Logistics' rates, routes, and services.[3] *See Morales*, 504 U.S. at 390. Accordingly, the court concludes that the FAAAA's preemption clause has no application to this action.[4] Therefore, the

---

[3] The court recognizes that little, if any, authority speaks directly to specifically what constitutes a state action having such a tenuous, remote, or peripheral effect on a carrier's rates, routes, or services as to avoid preemption under the FAAAA. *See DiFiore*, 646 F.3d at 86 (noting that the "related to" language is highly elastic, and "of limited help, given that countless state laws have *some* relation to the operations of [carriers] and thus some potential effect on the prices charged or services provided" and that "[e]qually general is the is the gloss supplied by the cases of a 'significant impact' related to Congress' deregulatory and pre-emption related objectives,' rather than one merely 'tenous ,remote, or peripheral'") (internal citations omitted). The ambiguity on this point combined with the lack of case law factually analogous to the action here applying the FAAAA preemption clause persuades this court to conclude that this common law breach of contract claim is not preempted.

[4] Even if the FAAAA's preemption provision applied (which it does not), the court would find that Plaintiff's breach of contract action is saved by the *Wolen's* exception. Based upon the pleadings alone, Plaintiff's breach of contract claim is not "enlarged or enhanced by state laws or policies." *Wolens*, 513 U.S. at 233. Instead, it is an action to recover payment based upon an assignment of rights under a private contract. Notably, in every *potentially* relevant case cited by Defendant, the court either permitted common law breach of contract claims to proceed. *See Data Mfg.*,

court will not dismiss Plaintiff's breach of contract claim.

### 2. Equitable Claims (Counts II-VI)

Having concluded that the FAAAA preemption provision does not apply to this action, the court rejects Defendant's argument that Plaintiff's equitable claims are due to be dismissed as preempted.[5] To the extent Defendant maintains that these claims should be dismissed for failing to state a claim or because they are incompatible with the express contract that forms the basis of the breach of contract claim, the court simply is not persuaded by these arguments. First, the court has carefully reviewed the pleadings, and at this juncture, is satisfied that Plaintiff has plead sufficient facts to support each equitable claim.[6] Moreover, the court understands that Plaintiff would be entitled to equitable relief only if no adequate legal remedy existed. *See Di Giovanni v. Camden Fire Ins. Ass'n*, 296 U.S. 64, 69 (1935). However, the Federal Rules of Civil Procedure contemplate and

---

*Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849 (8 th Cir. 2009); *Barber Auto Sales*, 494 F. Supp. 2d 1290; *Deerskin Trading Post*, 972 F. Supp. 665; *Cerdant, Inc. v. DHL Express (USA), Inc.*, 2009 WL 723149 (S.D. Ohio Mar. 30, 2009). If courts have refused to apply the FAAAA preemption provision to breach of contract claims in actions where the carriers themselves have been a party, this court can see no reason to depart from that reasoning where, as here, the carrier is not a party to the lawsuit.

[5]The court understands that many courts have dismissed equitable claims as preempted by the FAAAA when permitting routine breach of contract claims to proceed. *See All World Prof'l Travel Servs., Inc. v. Am. Airlines, Inc.*, 282 F. Supp. 2d 1161, 1169 (C.D. Cal. 2003) (holding that claim for unjust enrichment would be preempted if it related to prices, routes, or services because it is "derive[d] from the enforcement of state law"); *Dugan v. FedEx Corp.*, No. CV 02-1234, 2002 WL 31305208, at *3 (C.D. Cal. Sept. 27, 2002) (holding claim for unjust enrichment preempted under the ADA); *Cerdant*, 2009 WL 723149, at *4 (holding claims for unjust enrichment and constructive trust preempted by the FAAAA as going beyond a "routine breach of contract claim," which would result in an enlargement or enhancement of the parties' bargain); *Deerskin Trading Post*, 972 F. Supp. at 672-73 (holding claim for constructive trust preempted by the FAAAA); *SVT Corp. v. Fed. Express Corp.*, No. C-94-3057, 1997 WL 285051, at *3-*4 (N.D. Cal. May 19, 1997) (holding remedy of restitution preempted because it constitutes "a state-imposed remedy external to any agreement between the parties"); *Osband v. United Airlines, Inc.*, 981 P.2d 616, 621 (Colo. Ct. App. 1998) (observing that "a contract implied in law is based on equitable policies and, therefore, will be preempted by the FAAAA"). These cases are distinguishable because these courts found that FAAAA preemption applied but that the breach of contract claims were saved by the *Wolens* exception. Therefore, because the equitable claims in these cases went beyond the parties bargain, the courts found that the FAAAA preempted these causes of action. Here, the court has found the FAAAA preemption provision inapplicable. Therefore, the same rationale does not apply.

[6]Whether Plaintiff can produce sufficient evidence sufficient to survive summary judgment on these claims is a different question that is not before the court.

expressly authorize alternative pleading. *See* Fed. R. Civ. P. 8(d) (permitting a party to "set out 2 or more statements of claim...alternatively or hypothetically"). Thus, rather than dismiss Plaintiff's equitable claims on the pleadings, the court finds the better course is to permit Plaintiff to choose between its legal and equitable relief at the close of discovery and upon the conduct of a pre-trial conference. Accordingly, the court will not dismiss Plaintiff's claims for equitable relief at this stage of the case.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings (Doc. #28) is due to be denied. A separate order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this \_\_\_\_14th\_\_\_\_ day of June, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE